IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KRISTINA GARZA, BRIANNA BAXTER, MARY )
ROSE SHORT, SARAH DURLING, VINCENT )
CAPALBO, TURN THE HEARTS, )
     Plaintiffs, )
)
vs. )
)
JACKSON PUBLIC SCHOOL DISTRICT; DR. )
FREDDRICK MURRAY, individually and in his )
official capacity as Principal of Murrah High School; )
GERALD JONES, individually and in his official )
capacity as Executive Director for the Jackson Public )
School District Campus Enforcement Department; )
LOLA MCCARTY, IBM #050, individually and in )
her official capacity as an officer for the Jackson )
Public School District Campus Enforcement )
Department; JOHN WILLIAMS, IBM #247, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; NORRIS DUNSON, IBM )
#226, individually and in his official capacity as an )
officer for the Jackson Public School District )
Campus Enforcement Department; GLENN DAVIS, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; JERRY LUCKETT, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; ERIC GREENE, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; CHARLES MCINNIS, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; Officer ARTHUR )
WILLIAMS, individually and in his official capacity )
as an officer for the Jackson Public School District )
Campus Enforcement Department; Officer DOOD, )
individually and in his official capacity as an officer )
for the Jackson Public School District Campus )
Enforcement Department; UNKNOWN OFFICERS )
1 - 10, individually and in their official capacity as )
officers for the Jackson Public School District )
Campus Enforcement Department; HINDS )
COUNTY; HINDS COUNTY SHERIFF )
DEPARTMENT; and UNKNOWN OFFICERS 1 - )
10, individually and in their official capacity as )
officers for the Hinds County Sheriff Department, )

     Defendants.



SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAR − 4 2015

ARTHUR JOHNSTON
BY_____ DEPUTY

Civil Action No.: 3:15cv158 HTW-LRA

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

Come now Plaintiffs Kristina Garza, Brianna Baxter, Mary Rose Short, Sarah Durling, Vincent Capalbo, and Turn the Hearts doing business as Survivors, a California Non-profit Corporation, and by and through counsel, and for their Complaint state as follows:

### INTRODUCTION

1.      On March 5, 2012, Plaintiffs placed themselves on the public sidewalk adjacent to Murrah High School to engage in peaceful, lawful expressive activity on a matter of significant moral, political, and religious import.

2.      While there Jackson Public School administrators and Campus Enforcement officers unlawfully obstructed plaintiffs free speech activities, illegally seized plaintiffs free speech signs and cameras, ordered plaintiffs off of the public sidewalk, and threatened to arrest plaintiffs.

3.      On March 6, 2012, Plaintiffs returned to the public sidewalk adjacent to Murrah High School to engage in peaceful, lawful expressive activity on a matter of significant moral, political, and religious import.

4.      While there Jackson Public School administrators and Campus Enforcement officers unlawfully obstructed plaintiffs free speech activities, illegally seized plaintiffs free speech signs, ordered plaintiffs off of the public sidewalk, unlawfully detained Plaintiffs Durling and Capalbo, and unlawfully arrested Plaintiffs Garza and Baxter.

5.      While Graza and Baxter were in custody, officers subjected them to abusive

2

conduct designed to humiliate and intimidate them. The officers engaged in this conduct to punish them for "talking about abortion" and to chill them from exercising their First Amendment rights in the future.

6.      Plaintiffs file this action to vindicate their own rights and the rights of others to engage in free speech activity on a public sidewalk without unlawful arrest, intimidation, and fear of police retaliation.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983.

8.      The Court has authority to grant the requested relief under 28 U.S.C. § 1343(a)(4) and award attorneys' fees under 42 U.S.C. § 1988.  The Court may address the declaratory relief requested pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in the United States District Court for the Southern District of Mississippi, Jackson Division pursuant to 28 U.S.C. § 1391(b), because the conduct complained of occurred in this District.

## PARTIES

10.     Plaintiff TURN THE HEARTS, doing business as Survivors, is a non-profit corporation, duly organized and existing under the laws of the State of California.

11.     Plaintiffs Kristina Garza ("Garza"), Brianna Baxter ("Baxter"), Mary Rose Short ("Short"), Vince Capalbo ("Capalbo") and Sarah Durling ("Durling") are citizens of the

United States, of the State of California, are pro-life activists and were participants with Survivors at the time the events complained of herein occurred.

12.     Defendant Jackson Public School District ("JPSD" and/or "District") is, and at all times herein mentioned was, a governmental entity organized and existing under the laws of the State of Mississippi, and is a corporate entity capable of suing and being sued. Defendant JPSD maintains and operates the Campus Enforcement Department ("CED") of the Jackson Public School District, which, in the first instance, is responsible for the enforcement municipal ordinances and state statutes on and around the school campuses located in the JPSD.

13.     Defendant Hinds County ("the County") is, and at all times herein mentioned was, a governmental entity organized and existing under the laws of the State of Mississippi, and is a corporate entity capable of suing and being sued. Defendant County maintains and operates the Hinds County Sheriff Department (HCSD), which, in the first instance, is responsible for the enforcement municipal ordinances and state statutes in the City of Jackson, Hinds County, Mississippi.

14.     Defendant Hinds County Sheriff Department ("HCSD") is, and at all times herein mentioned was, a governmental entity organized and existing under the laws of the State of Mississippi, and is a corporate entity capable of suing and being sued. Defendant HCSD is maintained and operated by Defendant Hinds County.

15.     Defendant Gerald Jones ("Jones") was at all times pertinent to this Complaint the Executive Director of the Jackson Public School District Campus Enforcement Department. Jones is, and at all times mentioned herein was, employed by the District as

Executive Director of the Jackson Public School District Campus Enforcement

Department, and in doing the acts hereinafter described, acted within the course and

scope of his authority and employment with the District and pursuant to the official

policies, customs, procedures, and usages of the District and was an agent of each of the

other defendants.  He is sued in his individual and official capacity.

16.     Defendant Freddrick Murray ("Murray") was at all times pertinent to this

Complaint the Principal of the Murrah High School, located within the Jackson Public

School District.  Murray, at all times mentioned herein, was employed by the District as a

the Principal of Murrah High School, and in doing the acts hereinafter described, acted

within the course and scope of his authority and employment with the District and

pursuant to the official policies, customs, procedures, and usages of the District and was

an agent of each of the other defendants.  He is sued in his individual and official

capacity.

17.     Lola McCarty ("McCarty") is, and at all times mentioned herein was, employed by

the District as a sworn police officer with the JPSD, and in doing the acts hereinafter

described, acted within the course and scope of her authority and employment with the

District and pursuant to the official policies, customs, procedures, and usages of the

District and was an agent of each of the other defendants.  She is sued in her individual

and official capacity.

18.     John Williams ("Williams") is, and at all times mentioned herein was, employed

by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter

described, acted within the course and scope of his authority and employment with the

District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants. He is sued in his individual and official capacity.

19.     Norris Dunson ("Dunson") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants. He is sued in his individual and official capacity.

20.     Glenn Davis ("Davis") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants. He is sued in his individual and official capacity.

21.     Jerry Luckett ("Luckett") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants. He is sued in his individual and official capacity.

22.     Eric Greene ("Greene") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants.  He is sued in his individual and official capacity.

23.     Charles McInnis ("McInnis") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants.  He is sued in his individual and official capacity.

24.     Arthur Williams ("A. Williams") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and was an agent of each of the other defendants.  He is sued in his individual and official capacity.

25.     Officer Dood ("Dood") is, and at all times mentioned herein was, employed by the District as a sworn police officer with the JPSD, and in doing the acts hereinafter described, acted within the course and scope of his authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the

District and was an agent of each of the other defendants.  He is sued in his individual and official capacity.

26.    Unknown Officers 1-10 at all times mentioned herein were employed by the Jackson Public School District as sworn police officers with JPSD, and in doing the acts hereinafter described acted within the course and scope of their authority and employment with the District and pursuant to the official policies, customs, procedures, and usages of the District and were agents of each of the other defendants.  They are sued in their individual and official capacities.

27.    Unknown Officers 1-10 at all times mentioned herein were employed by Hinds County as sworn police officers with the HCSD, and in doing the acts hereinafter described acted within the course and scope of their authority and employment with the County and pursuant to the official policies, customs, procedures, and usages of the County and were agents of each of the other defendants.  They are sued in their individual and official capacities.

## ALLEGATIONS OF FACT

28.       Plaintiffs Garza, Baxter, Short, and Durling, were participants with "Survivors" at the time the events herein described took place.  Survivors is a Christian, pro-life activism organization dedicated to educating high school and college age individuals.

29.    In the spring of 2012, the Survivors began their semi-annual Campus Life Tour. The Campus Life Tour team typically consists of 8-10 young men and women, traveling throughout the United States with educational displays designed to introduce the abortion

8

debate to high school and college students.  Through the use of displays, educational

literature and intelligent debate, the Survivors challenge students to rethink their position

on abortion around hundreds of campuses every year. Their purpose is to inform and

persuade concerning a matter of great social, political, and religious interest.

30.     On March 5, 2012, the plaintiffs and other participants with Survivors went to the

vicinity of Murrah High School located at 1400 Murrah Drive, Jackson, Mississippi.

Plaintiffs arrived outside Murrah High School at approximately 3:20 p.m. Short parked

near the curb on Murrah Drive and the plaintiffs all exited the vehicle and unloaded their

signs and literature that the group was going to hold and hand out.   All of the plaintiffs

took positions along the public sidewalk. Sarah Durling held two signs and spoke to

students.  Kristina Garza and Jayne White, also a participant with Survivors, handed out

literature and spoke to students.  Garza, Durling, White and Short all videotaped the

events at various times.  Plaintiffs located themselves so as to convey their message to the

students leaving the school, but they did not obstruct or interfere with the free passage of

pedestrians or students on the public sidewalk.  At no time did any of the plaintiffs raise

his or her voice above the level of normal conversation nor did they enter the school

grounds.

31.     Within minutes of the group's arrival on March 5th, school administrators and

JPSD Campus Enforcement Officers instructed Garza to move across the street from the

school.  Principal Dr. Freddrick Murray instructed students to go back into the school and

not to look at the signs or take the literature from Garza.  Dr. Murray spoke with Garza

and observed JPSD Campus Enforcement officers seize Durling's signs and take the

signs to the grassy area across the street from the public sidewalk. Durling walked across the street, retrieved her signs, and brought them back to the public sidewalk adjacent to the school.

32.     Garza continued to offer literature to students on the public sidewalk. Dr. Murray and other school administrators and Campus Enforcement officers told the students to move back off of the public sidewalk and to move away from the plaintiffs.

33.     At approximately 3:40pm, Dr. Murray instructed all of the students to "move off the public sidewalk" and go "back into the school" and "on to school property."

34.     At 3:50, Officer Dood grabbed Durling's camera and put his hand in Garza's face. Officer Dood grabbed Garza's hand and cell phone camera to prevent her from videotaping the physical assault on Durling.

35.     Next, an officer whom Plaintiffs are informed and believe is, Officer Arthur Williams approached Garza in the vicinity of the other plaintiffs and told Garza that plaintiffs were going to have to move across the street or be arrested. Williams acknowledged that the sidewalk was a public sidewalk, but he insisted that the group move across the street.

36.     Next, Chief Gerald Jones approached Garza. Chief Jones told Garza that if she stood on the public sidewalk she would be arrested for trespassing. Chief Jones told Garza that the public sidewalk was school property when the school buses pull up after school. Chief Jones told Garza that she needed a special permit in order to stand on the public sidewalk adjacent to Murrah High School. During the entire time, several JPSD Campus Enforcement officers (at least 7) and several Murrah High School administrators

10

observed the group's activities and threatened to arrest Plaintiffs for engaging in

peaceful, free speech activities on the public sidewalk.  Plaintiffs concluded their

activities at approximately 4:00 pm once all of the students had left the school.

37.     On March 6, 2012, the plaintiffs and other participants with Survivors returned to

the vicinity of Murrah High School. Plaintiffs arrived outside Murrah High School at

3:25 p.m. Short parked near the curb on Murrah Drive and the plaintiffs all exited the

vehicle and unloaded their signs and literature that the group was going to hold and hand

out.   All of the plaintiffs took positions along the public sidewalk adjacent to Murrah

Drive.  Plaintiffs located themselves so as to convey their message to the students leaving

the school, but they did not obstruct or interfere with the free passage of pedestrians or

students on the public sidewalk.  At no time did any of the plaintiffs raise his or her voice

above the level of normal conversation nor did they enter the school grounds.

38.     The plaintiffs split into two groups.  Jayne White, Mary Rose Short, and Sarah

Maher, stood on the grassy right of way across the street from Murrah High School.

Jayne White videotaped the events.  Vincent Capalbo, Sarah Durling, Brianna Baxter,

and Kristina Garza stood on the public sidewalk adjacent to Murrah High School.

Capalbo and Durling each held signs and engaged in conversations with students as the

students exited the school.  Baxter and Garza walked up and down the public sidewalk

offering literature to students and engaged in conversation with students as the students

exited the school.

39.     Within minutes after the group arrived, at least five JPSD campus enforcement

officers and at least three school administrators approached Garza, Durling, Capalbo, and

Baxter. Investigator John Williams and another officer positioned themselves directly in front of Durling's and Capalbo's signs to prevent students from seeing the content of the signs. Another officer stood in front of Garza on the public sidewalk. Every time that Garza tried to hand out a piece of literature to a student, the officer put up her hands to block Garza from handing out literature to the students. Another officer stood in front of Baxter to block her from handing out literature to students. The officer told the students that they would get in trouble if they took the literature from Baxter.

40.    One male officer grabbed Baxter's arm and tried to forcibly move her across the street. Baxter asked the officer, "Am I on the public sidewalk?" The officer continued to grab Baxter's arm, telling her to move across the street. The officer eventually stopped trying to drag Baxter across the street. Next, a group of officers surrounded Baxter and said to each other, "Block her from handing any out." Baxter continued to offer literature to students walking on the public sidewalk even though the group of officers was surrounding her. Next, Sgt. Lola McCarty came up behind Baxter and handcuffed her right wrist and used the handcuffs to pull Baxter's right hand behind her back. Another officer took the stack of literature from Baxter's left hand. Sgt. McCarty then grabbed Baxter's left hand and pulled it behind her back and handcuffed both hands together. Baxter repeatedly asked the officers what she was being arrested for. Sgt. McCarty and other officers moved Baxter across the street and put her in the back of a police car. None of the officers told Baxter what she was being arrested for.

41.    Garza stood on the public sidewalk and tried to hand out literature for about 5-10 minutes before five police officers surrounded her. Plaintiffs are informed and believe

that the officers who surrounded Garza included, but were not limited to Deputy Chief

Glenn Davis, Sgt. Norris Dunson, Deputy Chief Jerry Luckett, Sgt. Eric Greene, Sgt.

Lola McCarty, and Officer John Williams.  One officer grabbed Garza's arm, while

another officer pried Garza's fingers off of the stack of literature that she was holding,

and yet another officer pulled handfuls of literature from Garza's arms and dropped it on

the sidewalk.  Another police officer grabbed Garza's camera phone and put it in his

breast pocket.  An officer handcuffed Garza with her arms behind her back, walked her

across the street, and put her in the back of a police car.  Garza repeatedly asked what she

was being arrested for, but none of the officers told Garza the grounds for her arrest.

42.     On the drive to the jail, the officer that arrested Baxter told Baxter and Garza that

the group should not be talking about abortion.  The officer said, "That's private.  We just

don't talk about that."  Both officers appeared visibly upset and refused to answer

Baxter's and Garza's questions.

43.     When Baxter and Garza arrived at the jail, the officers got out of the car and

conversed for approximately 5-10 minutes before removing Garza and Baxter from the

police car.  The officers took Garza and Baxter into the jail, where they were strip-

searched.  During the search, the officer that arrested Baxter continued to talk with other

officers and inmates about how she did not like the group talking about abortion and that

Baxter and Garza needed to shut up.

44.     During the entire time that Plaintiffs held signs, handed out literature, and spoke to

students on the public sidewalk, numerous cars drove by, on the public street adjacent to

the sidewalk, uninterrupted by plaintiffs' activities.  School buses pulled up to curb next

13

to the public sidewalk to pick up students.  Plaintiffs did not block the school buses, prevent the buses from picking up students, or inhibit the students from getting on the buses in any way.

45.     After JPSD Campus Enforcement officers arrested Garza and Baxter, an officer approached Durling and yelled in her face to move across the street.  Several officers surrounded Durling and Capalbo and their signs.  The officers seized Durling's and Capalbo's signs.  One officer grabbed Durling by the wrist extremely hard.  The officers physically detained both Durling and Capalbo, and escorted them both across the street to the grassy area.  Durling and Capalbo were eventually released, but officers told each of them that they would be arrested if they returned to the public sidewalk adjacent to Murrah High School.

46.     Plaintiffs are informed and believe that, at the time of these incidents, students utilized the public sidewalk for walking to and from school and other members of the public were permitted to and routinely did walk and/or jog down the sidewalk throughout the day.  Plaintiffs are informed and believe that, at the time of these incidents, the school's basketball courts, track, and jogging trails were open to the public for use without any special permission needed.

47.     Garza and Baxter were taken to the Hinds County Jail in Raymond and held until approximately 2:30 am.  They were not given food or water and were not permitted to call an attorney.  Baxter and Garza were put in a holding cell near many male inmates. The male inmates gawked at the young girls and made suggestive and rude comments to the girls.

48.      At about 3:00 am, Baxter and Garza were transported to the Hinds County Jail in Jackson.  They were strip-searched again and then processed into the jail.  During the booking process, several officers told Baxter and Garza that they "should have expected this" because they were "talking about abortion."  Garza asked the officers why they were being so abusive to her and Baxter.  The officers told Garza that she should expect to be arrested and mistreated if she was going to talk about abortion.

49.      Eventually, Garza and Baxter were given uniforms and taken to a cell.  Baxter and Garza asked two of the officers what time it was.  The two officers laughed at the girls and retorted, "What? Do you have somewhere to be?" and continued to laugh at the girls without telling them the time.  Sometime later, the two officers came back to Garza and Baxter's cell with cleaning supplies but gave the girls no instructions.  The officers yelled at the girls for not knowing what was going on and then made fun of them and laughed at them.

50.      The girls waited for a couple of hours and kept asking when they were going to court and when they could make a phone call.  The girls yelled down the hall for a long time trying to figure out when they would be allowed to contact a lawyer or go before a judge.  All of a sudden an officer yelled over the loudspeaker that bail was set at $2,000.00 each, laughed, and told the girls that they were not going to court.

51.      At some point, the girls were permitted to make a local phone call.  They asked for a phone book so that they could look up the number of a local attorney.  The officers were rude and difficult and lectured Garza and Baxter, telling the girls that they should have expected to be arrested for talking about abortion and should have planned better

15

and memorized a local number.  After some time, the officers eventually gave the girls a phone book.

52.      Awhile later and sometime before noon, an officer came and got the girls and took them to an elevator to go to court.  The officer kept yelling at Garza and Baxter. Garza asked the officer if she was being abusive to the girls because they were talking about abortion.  The officer screamed at Garza and told her to shut up.  None of the officers told Garza and Baxter what was going on.

53.      Once at court, Garza and Baxter were finally given a drink of clean water.  At the conclusion of court, Garza and Baxter were given copies of their release paperwork and taken back to the jail.

54.      Garza and Baxter were completely ignored in their cell for several hours.  Two officers finally came to their cell at about 4:30 pm.  Garza and Baxter thought they were being released so they got up and walked towards the door of the cell.  The officers screamed at Garza and Baxter.  After that, the officers ignored Garza and Baxter again until they were released sometime later.

55.      Plaintiffs reasonably fear that JPSD Campus Enforcement will arrest them and other pro-life activists for conduct that is protected by the U.S. and Mississippi Constitutions.

56.      As a result of Defendants' conduct, Plaintiffs Garza and Baxter have lost time, been deprived of property, been required to incur expenses to defend themselves against unlawful charges by Defendants, suffered pain, humiliation, embarrassment, discomfort, mental anguish, fear, anxiety, loss of reputation, and emotional distress.

57.     As result of Defendants' conduct, Plaintiffs Durling and Capalbo have been deprived of property, suffered pain, humiliation, embarrassment, discomfort, mental anguish, fear, anxiety, loss of reputation, and emotional distress.

58.     Further, Plaintiffs Turn the Hearts, led by Short, are planning to return to the public sidewalks in front of Murrah High School and have substantial reason (as set forth above) to believe that the unconstitutional, discriminatory behavior of the JPSD Campus Enforcement Department will continue and Plaintiffs and others will be hindered, restrained, and likely arrested and prosecuted for exercising their First Amendment rights, all making the need for injunctive relief urgent.

## ALLEGATIONS OF LAW

59.     Plaintiffs incorporate and reallege paragraphs 1 through 57 as though stated herein.

60.     All of the acts of the Defendants, their officers, agents, servants, and employees, as alleged herein, were done, or threatened to be done, under color of law and pretense of statues and ordinances of the City of Jackson and the State of Mississippi.

61.     The unlawful actions of the JPSD Campus Enforcement Department officers as alleged herein were taken and ratified by final policy makers for the District and for the City of Jackson and thus constitute policies, practices, customs, and usages sufficient to impose municipal liability.

62.     The actions taken by Defendants as alleged herein were extreme and in reckless disregard of the rights of Plaintiffs who were not engaged in any crime at the time of the wrongful action by Defendants.

63.     The City ordinances, specifically but not limited to the trespass ordinance,

interference with a bus driver ordinance, and the disorderly conduct ordinance, as

enforced by Defendants, are content- and viewpoint-based, abuses governmental power,

denies free speech in a traditional public forum, do not further any important or

substantial government interest, and impose restrictions that are greater than necessary to

further any government interest asserted.

64.     Specifically but not exclusively, these ordinances, as enforced by Defendants, are

content-based because the main effect of JPS Campus Enforcement Department

enforcement is to suppress speech having content that is disliked by the District.

65.     Specifically but not exclusively, these ordinances, as enforced by Defendants, are

viewpoint-based because the main effect of JPS Campus Enforcement Department

enforcement is to suppress speech of a certain viewpoint.  JPS Campus Enforcement

Department does not enforce the ordinances against persons who speak or hold signs or

sit on public sidewalks while speaking and holding signs for the purpose of

communicating messages that are not pro-life.  JPS Campus Enforcement Department

enforces these ordinances in the manner described herein only against those who are

communicating pro-life positions.

66.     Specifically but not exclusively, the ordinances are not narrowly tailored to serve

any significant governmental interest and impose restrictions that are greater than

necessary to further any significant governmental interest because, as applied, they

restrict free speech activity on the public right of way that does not interfere with general

use of the public right of way.

67.     Any interest advanced by Defendants to support enforcement of these ordinances against Plaintiffs is related to the suppression of constitutional and statutory rights and is insignificant compared to the infringement of rights caused by Defendants' enforcement.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983: Free Speech (First Amendment)
### and Due Process (Fourteenth Amendment)
### (By All Plaintiffs against All Defendants)

68.     Plaintiffs reallege paragraphs 1 through 66 of this Complaint and incorporate them herein by this reference.

69.     The acts of Defendants alleged herein deprived Plaintiffs of their rights of free speech, peaceable assembly, and free exercise of religion as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

70.     Defendants' unlawful and unreasonable arrests and threats of arrest without probable cause hindered and deprived Plaintiffs of their ability to effectively communicate their pro-life message.

71.     The acts of Defendants and their officers, agents, servants, and employees described herein were done, or threatened to be done, under color of law and pretense of the statutes, ordinances, regulations, customs, official policies, official procedures, and usages of the Jackson Public School District Campus Enforcement Department and the City of Jackson.

72.     Defendants committed these acts before a large crowd of students and the public. Plaintiffs did not consent to Defendants' acts described herein and found them to be harmful and offensive to their rights and person and dignity.

19

73.     As a direct and proximate result of the individual Defendants' actions described in this complaint, Plaintiffs suffered pain, humiliation, embarrassment, discomfort, mental anguish, fear, anxiety, loss of reputation, loss of earnings and emotional distress.

74.     Defendants intended to, and did, by their actions, prevent the exercise of Plaintiffs' rights of free speech, free exercise of religion, and peaceable assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

75.     At the time of the deprivations, Plaintiffs' rights of free speech, peaceable assembly, and free exercise of religion were clearly established and included the right to engage in the particular expressive activities for which plaintiffs were arrested.  Because plaintiffs' rights were clearly established at the time, defendants knew or should have known that their conduct violated important and cherished constitutional rights of the plaintiffs.

76.     In acting as alleged in this complaint, the individual defendants acted knowingly, willfully, and maliciously, and with oppression and reckless and callous disregard for plaintiffs' constitutionally protected rights, so as to justify an award of exemplary and punitive damages.

77.     Unless enjoined by this Court, defendants will continue to infringe Plaintiffs' constitutionally protected rights and thereby cause irreparable injury, as damages alone cannot fully compensate plaintiffs from the ensuing harm. This threat of injury from continuing violations requires injunctive relief.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983: UNLAWFUL SEIZURE (Fourth Amendment)
### and Due Process (Fourteenth Amendment)
### (By Plaintiffs Garza, Baxter, Durling, Capalbo against All Defendants)

78.     Plaintiffs reallege paragraphs 1 through 76 of this Complaint and incorporate them herein by this reference.

79.     On March 5, 2012, plaintiffs were peacefully exercising their free speech rights along a public sidewalk adjacent to Murrah High School.  When plaintiffs did not move across the street, as requested by defendants, the defendants collectively decided to seize plaintiffs' signs.  Defendants unlawfully seized plaintiffs' signs from Durling's hands.  Defendants collectively decided to seize plaintiffs' cameras to prevent them from video taping the events.  Defendants unlawfully seized Durling's camera while it was in her hand recording the events.  Defendants unlawfully seized Garza's camera while it was in her hand recording the events.

80.     On March 6, 2012, plaintiffs were peacefully exercising their free speech rights along a public sidewalk adjacent to Murrah High School.  When Plaintiffs Garza and Baxter handed out literature to students and spoke to students about abortion, the defendants collectively decided to arrest Plaintiffs Garza and Baxter and seize their literature.  Defendants handcuffed Garza and Baxter and escorted each of them to a police vehicle, pursuant to their collaborative decision to arrest them.  When Plaintiffs Durling and Capalbo did not move their signs across the street or stop handing out literature to students, the defendants collectively decided to detain Plaintiffs Durling and Capalbo and seize their signs and literature.  Defendants forcibly moved Durling and

Capalbo across the street and threatened to arrest them if they returned to the public sidewalk adjacent to Murrah High School.

81.     Plaintiffs Garza and Baxter verbally professed their innocence, but otherwise did not attempt to flee or physically resist the arrest in any manner whatsoever.

82.     Plaintiffs Durling and Capalbo verbally professed their innocence, but otherwise did not attempt to flee or physically resist the detention in any manner whatsoever

83.     There was no warrant or probable cause to seize any of the plaintiffs' property on March 5, 2012.

84.     There was no warrant to search, warrant for the arrest of, or reasonable suspicion to detain any of the plaintiffs on March 6, 2012.  The arrest and search of Baxter and Garza and the detention of Durling and Capalbo by defendants was without reasonable grounds for said defendants to believe plaintiffs had committed an offense and defendants knew they were without reasonable suspicion to detain or probable cause to arrest or probable cause to search plaintiffs.

85.     As a direct and proximate result of the actions and omissions of defendants, plaintiffs were denied their constitutional right to be secure in their persons against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

86.     At the time of the deprivations, plaintiffs' rights to be free from unreasonable search and seizure were clearly established and included the right to engage in the particular expressive activities for which plaintiffs were arrested and threatened with arrest.  Because plaintiffs' rights were clearly established at the time, defendants knew or

should have known that their conduct violated important and cherished constitutional rights of the plaintiffs.

87.     The acts of defendants and their officers, agents, servants, and employees, described herein were done, or threatened to be done, under color and pretense of the statutes, ordinances, regulations, customs, official policies, official procedures, and usages of the Jackson Public School District Campus Enforcement Department and the City of Jackson.

88.     Defendants committed these acts before a large crowd of students and the public. Plaintiffs did not consent to the defendants' acts described herein and found them to be harmful and offensive to their person and dignity.

89.     As a direct and proximate result of the individual defendants' actions, described in this complaint, plaintiffs have suffered pain, humiliation, embarrassment, discomfort, mental anguish, fear, anxiety, loss of reputation, loss of earnings and emotional distress.

90.     In acting as alleged in this complaint, the individual defendants acted knowingly, willfully, and maliciously, and with oppression and reckless and callous disregard for plaintiffs' constitutionally protected rights, so as to justify an award of exemplary and punitive damages.

91.     Unless enjoined by this Court, defendants will continue to infringe plaintiffs' constitutionally protected rights and thereby cause irreparable injury, as damages alone cannot fully compensate plaintiffs for the ensuing harm. This threat of injury from continuing violations requires injunctive relief.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983: Illegal Retaliation (First and Fourteenth Amendment)
### (By Plaintiffs Garza, Baxter, Durling, Capalbo against All Defendants)

92.     Plaintiffs reallege paragraphs 1 through 90 of this Complaint and incorporate them herein by this reference.

93.     Hinds County Sheriff Department Defendants' harassment of Plaintiffs Garza and Baxter after their arrest and while they were in custody was directed at Plaintiffs Garza and Baxter because of their constitutionally protected speech activities at Murrah High School and their pro-life views professed in custody.

94.     Such harassment constituted unlawful retaliation against Plaintiff Garza's and Plaintiff Baxter's exercise of constitutionally protected rights.  Such retaliation violated Plaintiffs' affirmative rights to freedom of speech secured by the First and Fourteenth Amendments to the United States Constitution.

95.     Hinds County Sheriff Department Defendants' conduct would chill a person of ordinary firmness from future First Amendment activity.

96.     But for the Hinds County Sheriff Department Defendants' desire to chill Plaintiff Garza's and Plaintiff Baxter's free speech activity, Defendants' would not have engaged in the harassing conduct described in this complaint.

97.     As a direct and proximate result of Hinds County Sheriff Department Defendants' actions in retaliating against Plaintiffs Garza and Baxter for the assertion and/or exercise of their constitutional rights, Plaintiffs Garza and Baxter were deprived of their rights to free speech. Plaintiffs Garza and Baxter have suffered, are suffering, and will continue to suffer, irreparable harm as a direct result of Hinds County Sheriff Department Defendants' conduct.

## FOURTH CAUSE OF ACTION
### Mississippi Constitution Article 3, Sections 11, 13, 14, AND 18

98.     Plaintiffs reallege paragraphs 1 through 96 of this Complaint and incorporate them herein by this reference.

99.     Defendants Jackson Public School District Campus Enforcement Department and City of Jackson, by their application and threats of application of the ordinances and statutes against the free speech of Plaintiffs violated Article 3, Sections 11, 13, 14, and 18 of the Mississippi Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.  Issue a preliminary and permanent injunction against Defendants, their agents, servants, employees, officials, or any other person acting in concert with them or on their behalf, enjoining them from interfering with Plaintiffs' lawful speech on the public sidewalks and public right-of-ways in Jackson, Mississippi, including public sidewalks in the vicinity of Murrah High School;

2.  Issue a preliminary and permanent injunction against Defendants, their agents, servants, employees, officials, or any other person acting in concert with or on their behalf, enjoining them from threatening or using City ordinances or State statutes to inhibit or suppress Plaintiffs' Constitutionally protected peaceful, expressive activities;

3.  Declare that Defendants' actions as alleged herein were unconstitutional both facially and as applied to Plaintiffs under the First and Fourteenth Amendments;

25

4. Declare that by threatening the arrest of plaintiffs on March 5, 2012, and by ejecting and causing the ejectment from the public sidewalk or public right-of-way in the vicinity of Murrah High School based on their free speech activity, defendants violated the plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Article 3, Sections 11, 13, 14, and 18 of the Mississippi Constitution;

5. Declare that by detaining, arresting, and causing the detentions and arrests of plaintiffs on March 6, 2012, and by ejecting and causing the ejectment from the public sidewalk or public right-of-way in the vicinity of Murrah High School based on their free speech activity, defendants violated the plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Article 3, Sections 11, 13, 14, and 18 of the Mississippi Constitution;

6. Enter judgment against the defendants;

7. Award nominal damages against all Defendants to each Plaintiff;

8. Award general damages to Plaintiff Garza and Plaintiff Baxter in no less than the following amounts:  $100,000 to each plaintiff;

9. Award special damages to each plaintiff according to proof;

10. Award exemplary and punitive damages to Plaintiffs Garza and Baxter as the court deems just and proper;

11. Award costs, interest and attorneys' fees pursuant to 42 U.S.C. § 1988 et seq., and other pertinent federal law;

12. Grant such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

In the event that a question of fact must be resolved, the plaintiffs hereby

demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil

Procedure.

Dated:  March 4, 2015

BELL & ASSOCIATES, P.A.
For PLAINTIFFS


By: _____
James D. Bell (MSB #2333)
P. Caleb Koonce (MSB #103859)
BELL & ASSOCIATES, P.A.
318 S. State Street
Jackson, Mississippi 39201
Telephone: (601) 981-9221
Facsimile: (601) 981-9958
Email: jbell@judgebell.com, ckoonce@judgebell.com


LIFE LEGAL DEFENSE FOUNDATION
Catherine W. Short (CA Bar No. 117442)*
Allison K. Aranda (CA Bar No. 215021)*
PO Box 890685
Temecula, CA 92589
Tel: (707) 227-6744
Fax: (951) 541-2711
Email:  akaranda@lldf.org, lldfojai@cs.com

*Application for admission Pro Hac Vice forthcoming

Attorneys for Plaintiffs